## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

LOUIS G. GRAYSON,                    :
                                     :        1:15-cv-0453
           Plaintiff,                :
                                     :        Hon. John E. Jones III
      v.                             :
                                     :
MATTHEW DeWITT, *et al.*             :
                                     :
           Defendants.               :

## MEMORANDUM & ORDER

### March 18, 2016

Plaintiff Louis G. Grayson asserts Fourth Amendment excessive force and related failure to intervene claims, as well as supervisory and municipal liability claims pursuant to 42 U.S.C. § 1983, and state law assault, battery, and intentional infliction of emotional distress claims.  (Doc. 68).  This action is brought against Officers Matthew DeWitt, Paul Thorne, Christopher Roosen, Chief Wes Kahley, and City of York (hereafter, collectively, "York Defendants"); Officers Daniel W. Miller, Michael Sampere, Chief Thomas C. Gross, and York Area Regional Police Department (hereafter, collectively, "York Area Regional PD Defendants"); Officers Jeffrey Leer, Cory Landis, Matthew Berry, John C. Shapley III, Chief Thomas Hyers, and Springettsbury Township (hereafter, collectively, "Springettsbury Defendants"); and Officer Robert Lehman and Spring Garden

Township (hereafter, collectively, "Spring Garden Defendants").  Presently

pending before the Court are two Partial Motions to Dismiss Plaintiff's Complaint

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by York

Defendants and Springettsbury Defendants.  (Docs. 39, 40).  For the reasons that

follow, Springettsbury Defendants' Motion shall be denied with respect to claims

for excessive force, battery, municipal liability, personal-capacity supervisor

liability, and intentional infliction of emotional distress.  Springettsbury

Defendants' Motion shall be granted with respect to the official-capacity

supervisor liability.  York Defendants' Motion will be denied with respect to

claims for municipal liability, personal-capacity supervisor liability, and

intentional infliction of emotional distress.  York Defendant's Motion will be

granted with respect to the official-capacity supervisor liability claim.

## I.     PROCEDURAL HISTORY

Plaintiff filed a Complaint on March 4, 2015, stating claims under 42 U.S.C.

§ 1983 for excessive force and failure to intervene in violation of his Fourth and

Fourteenth Amendment rights, as well as state law claims of assault, battery, and

intentional infliction of emotional distress against Defendants Michael DeWitt,

Paul Thorne, Christopher Roosen, Daniel W. Miller, Michael Sampere, Jeffrey

Leer, John C. Shapley III, and Robert Lehman.  (Doc. 1).  Plaintiff's Complaint

also states claims under § 1983 for supervisory liability against Chief Thomas C.

Gross, Chief Wes Kahley, and Chief Thomas Hyers, and for municipal liability against the City of York, York Area Regional Police Department, Springettsbury Township, and Spring Garden Township.  (*Id.*).

On May 8, 2015, Springettsbury Defendants and York Defendants each filed Partial Motions to Dismiss.  (Docs. 25, 26).  The remaining Defendants filed Answers to the Complaint on May 11 and 12.  (Docs. 27, 28).  On May 29, 2015, Plaintiff filed an Amended Complaint (Doc. 36), and York Area Regional PD Defendants and Spring Garden Defendants again filed Answers to Plaintiff's Amended Complaint.  (Docs. 37, 38).  Springettsbury Defendants and York Defendants renewed their Motions to Dismiss.  (Docs. 39, 40).

On August 18, 2015, the parties participated in mediation.  This resulted in a settlement between Plaintiff and York Area Regional PD Defendants and Spring Garden Defendants.  (Doc. 47).  On September 21, 2015, this Court issued an order dismissing those Defendants from the instant case.  (Doc. 36).

On September 4, 2015, as a result of ongoing discovery, Plaintiff filed a Motion for Leave to File a Second Amended Complaint to add two additional defendants from Springettsbury Township, Officers Cory Landis and Matthew Berry.  (Doc. 45).  Plaintiff filed a brief in support of his motion on September 18, 2015.  (Doc. 48).  Springettsbury Defendants filed an opposition brief on October 9, 2015.  (Doc. 55).  By Order dated December 14, 2015, this Court granted

Plaintiff's Motion, but alerted Plaintiff that his proposed Second Amended Complaint did not allege specific claims against either of the parties Plaintiff sought to add.  The Court also permitted the parties to file supplemental briefs regarding the pending Motions to Dismiss.  (Doc. 61).  Plaintiff filed his Second Amended Complaint on December 16, 2015, which still did not allege claims against the new Defendants, and then filed a corrected Second Amended Complaint on January 5, 2016.  (Docs. 62, 68).  On January 4, 2016, Springettsbury Defendants filed a supplemental brief in support of their Partial Motion to Dismiss.  (Doc. 64).

Having been fully briefed, the instant Motions are now ripe for review.

## II.    STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to

judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirement of Rule 8(a).  Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint attacked by Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to relief above the speculative level…." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than "a sheer possibility." *Iqbal*, 556 U.S. at 678.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 679. Next, the district court must identify "the 'nub' of the … complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips,* 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556-57). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## III.   FACTUAL SUMMARY

In accordance with the standard of review applicable to a motion to dismiss, the following facts are derived from Plaintiff's Complaint and viewed in the light most favorable to the Plaintiff.

In the early hours of the morning on September 6, 2013, officers from Springettsbury Township located Plaintiff, the suspect of previous robberies, at the Budget Host Inn on 1162 Haines Road in York, Pennsylvania.  (Doc. 68 ¶ 22). Numerous police officers from the above-listed police departments arrived on the scene and shouted for Plaintiff to open the door.  (*Id*. ¶¶ 23-24).  When Plaintiff did not respond, the officers tried to obtain entry to the hotel room with the use of a key card.  (*Id*. ¶ 25).  However, Plaintiff had secured the door using an interior lock.  (*Id*.).  At this time, Plaintiff alleges that the officers became hostile and abrasive, and began yelling obscenities and threats into the room.  (*Id*. ¶ 26).  A K-9 unit was also on the scene, and the officers allegedly threatened that "We'll put the dog on you," and "The dog is going to kill you."  (*Id*. ¶¶ 24, 27).

Eventually, the officers began to use a breach tool to batter down the door. (*Id*. ¶ 28).  As the door opened, Corporal Daniel Miller of the York Area Regional Police ("Defendant Miller") reached inside the opening with his taser and tased Plaintiff.  (*Id*. ¶ 29).  Plaintiff, who had been leaning against the door, then fell with his full body weight against the door.  (*Id*. ¶ 30).  Defendant Miller reached through the door again and tased Plaintiff a second time, before gaining entrance to the room.  (*Id*. ¶ 31).  As the officers pushed the door open, they knocked the door into Plaintiff, who was still in front of the door but attempting to move out of the way.  (*Id*. ¶ 32).  As Plaintiff was struck by the door, he fell forward and was tased

a third time, this time by Officer Dewitt of the York City Police Department ("Defendant DeWitt").  (*Id.* ¶ 33).

Once on the ground, Plaintiff alleges that he was tased numerous other times by the other officers, including but not limited to Officer Roosen of the York City Police Department, and officers of the Springettsbury Township Police Department.  (*Id.* ¶ 34).  Plaintiff alleges that as he was being tased, the officers shouted numerous threats, including "You heard us at the door," "What the fuck is your problem?" and "Die nigger die."  (*Id.* ¶ 38).  They also demanded that Plaintiff put his hands behind his back.  (*Id.* ¶ 39).  Plaintiff was unable to comply, however, because he was unable to move his arms or control his body, and told the officers that he could not move.  (*Id.* ¶¶ 39-40).  At this point, Plaintiff alleges that the officers pulled out their batons and began to hit, punch, and kick Plaintiff about his legs, back, arms and neck.  (*Id.* ¶¶ 41-42).  One officer allegedly jumped off of the bed to drop kick Plaintiff as he lay on the floor.  (*Id.* ¶ 42).  The Plaintiff avers that all of the officers present were involved in this abusive behavior, (*Id.* ¶ 45), and that none of the officers made any attempts to stop the beating.  (*Id.* ¶ 46).

At no point during the incident was there any indication to officers that Plaintiff was armed or had access to any weapons.  (*Id.* ¶ 35).  Further, Plaintiff avers that no weapons were used in any of the robberies that he was suspected of committing, nor had Plaintiff demonstrated any potential for violence.  (*Id.*).  At no

point did Plaintiff threaten the officers, with a weapon or otherwise, and Plaintiff had no means of escape from his hotel room should he have attempted to flee. (*Id.* ¶ 37).

Before the officers attempted to gain access to the room, Plaintiff had been on the phone with Ms. Sharee Legotte. (*Id.* ¶ 44). She remained on the line throughout the attack and was able to hear the entirety of the beating taking place over the phone. (*Id.*).

After several minutes, the officers pulled the Plaintiff's hands behind his back, handcuffed him, and ordered him to stand. (*Id.* ¶ 47). When he was unable to do so, Defendant DeWitt pulled Plaintiff up from the ground using the handcuffs, causing "extreme pain" to Plaintiff's arms and wrists. (*Id.* ¶ 49). At this point, Plaintiff informed the officers that he was having pain in his chest and could not stand. (*Id.* ¶ 50). They waited several minutes, but eventually told Plaintiff that the pain he was experiencing "doesn't matter" and walked him to the stairs. (*Id.* ¶¶ 50, 52). Plaintiff alleges that at this point, Defendant DeWitt and Officer Thorne ("Defendant Thorne") pushed Plaintiff down the flight of stairs while his hands were still cuffed behind his back. (*Id.* ¶ 53). At the bottom of the stairs, Officer Lehman of Spring Garden Township ("Defendant Lehman") took photos of Plaintiff, his condition, and the hotel room. (*Id.* ¶ 55). Plaintiff was then taken to the hospital and released after treatment. (*Id.* ¶ 56).

Plaintiff alleges that, following the altercation, he had taser prongs lodged in his skin, had split his tongue as the result of biting down while being beaten, had numerous bruises and cuts, (*Id.* ¶ 54), and continues to suffer from back and joint pain, as well as numbness and tingling in his right hand.  (*Id.* ¶ 57).  He further alleges memory loss as a result of the incident.  (*Id.*).

## IV.   DISCUSSION

In their Motions to Dismiss, Defendants raise several arguments as to why the Court should dismiss portions of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Springettsbury Defendants argue: (1) that Plaintiff did not plead sufficient facts to sustain the excessive force and state law battery claims against the individually named Springettsbury Township officers; (2) that, without an adequate excessive force claim and, thus, without an underlying constitutional violation, Plaintiffs have not met the pleading requirement for the municipal and supervisory liability claims; and (3) that Plaintiff failed to plead sufficient facts to support a claim of intentional infliction of emotional distress. The York Defendants argue: (1) that Plaintiff failed to show that Chief Kahley and the City of York were the moving forces behind the alleged violation, as required for municipal and supervisory liability; (2) that Chief Kahley has qualified immunity; and (3) that Plaintiff did not plead sufficient facts to sustain the claim of intentional infliction of emotional distress.

For the sake of efficiency, we will address the duplicative arguments against Plaintiff's claims of supervisory liability, municipal liability, and intentional infliction of emotional distress, each raised by both groups of Defendants, only once.

### A.      Excessive Force and Battery

We will begin with Springettsbury Defendants Motion to Dismiss the excessive force and state law battery claims. We analyze a claim of excessive force during an arrest under the objective reasonableness standard of the Fourth Amendment. *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004). "'A claim for excessive force under the Fourth Amendment requires a plaintiff to show that a seizure occurred and that it was unreasonable.'" *Id.* (quoting *Curley v. Klem*, 298 F.3d 271, 279 (3d Cir. 2002)). Determining the reasonableness of officer conduct requires consideration of "whether the police officer's 'actions [were] "objectively reasonable" in light of the facts and circumstances' facing the officer, regardless of the officer's intent or motivation." *Id.* (quoting *Graham v. Conner*, 490 U.S. 386, 396-97 (1989)). Generally, reasonableness "should frequently remain a question for the jury." *Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004).

Here, Plaintiff avers that the individually named Springettsbury Township officers participated in the alleged conduct, including: (1) tasing him in his back, stomach, neck, and head; (2) hitting him with their batons about his legs, back,

arms, neck, and head; and (3) hitting him with their fists, kicking him, and, in one instance, jumping off the bed to drop kick him. (Doc. 68 ¶¶ 34, 41, 42).  The Springettsbury Defendants argue that Plaintiff's allegations only indicate that the officers, as a group, were involved in the conduct, without specifying the conduct that each officer performed. Defendants argue that Plaintiff's allegation amounts to a "naked assertion" or a "conclusory allegation" unless Plaintiff can pair specific conduct with specific officers. We find this argument unpersuasive.

At the pleading stage, Plaintiff has the burden of alleging enough facts to make a claim for relief plausible. Plaintiff has provided a detailed account of his encounter with the various officers and has alleged that all of the Springettsbury Township officers present at the scene participated in the use of force. Given the fervor of the circumstances alleged, and the fact that Plaintiff specifically stated that all officers present were engaged in the conduct and none abstained or looked on, we find that Plaintiff need not pair specific conduct with specific individuals at this early stage.  It would be unreasonable to expect Plaintiff to know, without the benefit of additional discovery, the precise actions of each individual officer, particularly when Plaintiff has alleged that he was face-down on the floor. Given the specificity of Plaintiff's pleadings, and reviewing the facts in the light most favorable to Plaintiff, we find that dismissing Plaintiff's excessive force claims at this stage would be premature and imprudent.

In conjunction with his claim of excessive force, Plaintiff has also alleged a state law claim of battery. Pennsylvania courts have defined battery as "'a harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff or a third person to suffer such a contact, or apprehension that such a contact is imminent.'" *Levenson v. Souser*, 557 A.2d 1081, 1088 (Pa. Super. Ct. 1989) (quoting Prosser and Keeton, *Law of Torts*, at 39 (5th ed. 1984)). "'A bodily contact is offensive if it offends a reasonable sense of personal dignity.'" *Herr v. Booten*, 580 A.2d 1115, 1117 (quoting Restatement (Second) of Torts § 19). "Implicit in the tort of battery is the recognition that an individual has a right to be free from unwanted and offensive or harmful intrusions upon his own body." *Id.*

Consistent with the analysis of excessive force, we find that Plaintiff's allegations that Defendants made intentional, harmful contact with Plaintiff's body are sufficient to sustain the state law claim of battery. Therefore, we deny Springettsbury Defendants' Motion to Dismiss the claims of excessive force and battery.

## B.    Municipal Liability

We now consider Defendants' argument regarding Plaintiff's municipal liability claims against the City of York and Springettsbury Township. Defendants argue that Plaintiff has not sufficiently identified a policy or custom that was the

moving force behind the conduct and that Plaintiff has not sufficiently alleged prior similar incidents.

"When execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts injury . . . the government as an entity is responsible under § 1983." *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). Thus, "in order for a government entity…to be liable under § 1983, the plaintiff must identify a policy or custom of the entity that caused the constitutional violation." *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572, 580 (3d Cir. 2004). "Policy is made when a 'decision maker possess[ing] final authority to establish a municipal policy with respect to the action' issues an official proclamation, policy or edict." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "A course of conduct is considered to be a custom when, though not authorized by law, 'such practices of state officials [are] so permanently and well-settled' as to virtually constitute law." *Id.* Policy or custom causation may be established by "demonstrat[ing] that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *A.M.*, 372 F.3d at 580 (3d Cir. 2004) (quoting *Bd. Of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 407 (1997)).

Here, Plaintiff has alleged several courses of conduct as evidence of custom, including: (1) failing to investigate or take action against the individual officers after the incident in question; (2) failing to train or discipline officers regarding proper use of force after being made aware of prior incidents of possible excessive force; (3) having a citizen's complaint procedure in which complaints are dismissed, ignored, or indefinitely postponed; (4) failing to follow through with department policy on handling citizen's complaints or investigations into the use of force; (5) participating in a "code of silence" among officers to avoid investigations; (6) failing to properly document the amount of force used to effectuate an arrest, who used the force, the injuries caused by the force used, and failure to maintain pictures of the individual after the arrest took place; (7) failing to have or follow a policy regarding when to properly breach an enclosed space to effectuate an arrest; (8) failing to have or follow a policy regarding how to transport an individual who was subjected to force, including the use of a taser and baton; and (9) condoning and supporting actions of officers through verbal encouragement and/or by not acknowledging the incidents. (Doc. 68 ¶ 136).

Defendants argue that the above list is not sufficiently specific.  We disagree.  The above-described allegations are extensive, and though they may be somewhat lacking in particulars, Plaintiff has certainly pled enough facts through his Complaint to make the above allegations plausible.  Taking, as we must,

Plaintiff's account of the events of September 6, 2013 as true, the named officers demonstrated an extraordinary show of force against an unarmed man lying face down on the floor. The officers then lifted Plaintiff to his feet by gripping only his handcuffs, while he experienced chest pain. (Doc. 68 ¶ 49, 50). They later pushed Plaintiff down the stairs. (Doc. 68 ¶ 53). It is plausible that officers would act in this way where they have not been properly trained, and it is further plausible that the supervisory officers were aware of, and condoned, such behavior in the instant case.

Furthermore, Plaintiff has specifically pled to six prior incidents of excessive force, three each for the City of York and Springettsbury Township. (Doc. 68 ¶¶ 63, 67). Plaintiff has provided the names of the complainants and the years of the incidents. Defendants argue that Plaintiff did not provide enough specificity with regard to the prior similar incidents. The York Defendants, in particular, cite to *Jacob v. Palmer*, 2015 WL 1033294 (E.D. Pa. Mar. 10, 2015), which rejected an allegation that "other similar incidents have occurred in the past involving defendant Officer Palmer and unknown CID officer." *Jacob*, 2015 WL 1033294 at n.4. The allegations in this case, however, are easily distinguished from this case law. Here, Plaintiff did not make a vague allegation of "other similar incidents," but provided names and years and specified that the incidents involved possible use of excessive force. Rather, Plaintiff provided sufficient detail to pinpoint these

specific incidents. Plaintiff further avers that, even with the knowledge of prior similar incidents, Defendants did not contact him regarding his complaint. (Doc. 68 ¶ 61). In addition, Plaintiff asserts that Springettsbury Township, despite having knowledge of prior similar incidents, failed to even create an incident report regarding Plaintiff's complaint. (Doc. 68 ¶ 70).

The specific facts that Plaintiff points to regarding past incidents, as well as the factual support alleged by Plaintiff in relation to his own incident, creates a plausible claim for relief based on allegations of a custom or policy that the municipal police departments in question condone the poor behavior of their officers.  The facts also create a reasonable presumption that the police departments may not properly train officers, may not follow through with citizens' complaints, and may not discipline or discourage such conduct from individual officers. Further, Defendants' awareness of prior incidents of excessive force complaints makes it plausible that the municipality acted with deliberate indifference regarding the consequences of such customs, which include the potential for future violations. Thus, at this early stage of the proceedings, we deny Defendants' Motions to Dismiss with regard to Plaintiff's claims of municipal liability.

### C.     Supervisory Liability

We next consider Plaintiff's claims against Defendants Kahley and Hyers for supervisory liability. Plaintiff has asserted claims against the Defendants in both their individual and official capacities as police chiefs for York and Springettsbury Township, respectively, at the time of the incident. In their Motions, Defendants do not specify whether they believe the claims should be dismissed in either, or both, of these capacities.  We will take the absence of specificity to mean that Defendants seek dismissal in both, or either, capacities. We begin with Plaintiff's claims against the Defendants in their official capacities.

### 1.     Redundancy of Plaintiff's Claims Against Defendants Kahley and Hyers in their Official Capacities

Suits against government employees in their official capacities "generally represent another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell,* 436 U.S. at 690 (1978)). Accordingly, "it is a well established practice in the Third Circuit to dismiss redundant § 1983 claims against public officers in their official capacities where a claim has also been made against the public entity that employs them." *M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*, 43 F.Supp.3d 412, 419 (M.D. Pa. 2014) (internal quotations omitted). "[R]edundant official capacity claims may unnecessarily clutter the docket and may confuse a jury." *Id.*

Neither of the moving Defendants seeks dismissal on redundancy grounds; however, the Court has discretion in this area. *See Hordych v. Borough of N.E.*, No. 10-16, 2010 WL 1707735, at *8 (W.D.Pa. Apr. 27, 2010). Further, the Court believes that dismissal of the supervisor liability claims against Defendants Kahley and Hyers in their *official* capacities is justified and would help ease potential confusion for a jury. *See M.S.*, 43 F.Supp.3d at 419; *Moore v. City of Phila.*, No. 14-133, 2014 WL 859322, at *3 (E.D.Pa. Mar. 5, 2014). Plaintiff's allegation that a policy or custom was the moving force behind the conduct is already reflected in his municipal liability claims against Defendants City of York and Springettsbury Township. Both claims advocate for supervisory liability, and as suing the individual Defendants is synonymous with suing the entity for which they act as agents, *see Kentucky*, 473 U.S. at 159, 165-66, the claims are essentially duplicative. There is thus no prejudice to the Defendant in dismissing the redundant claim. Furthermore, the vast majority of precedent in the Third Circuit supports dismissing this kind of redundant claim, and we see no special need to deviate from that pattern in this instance. *See Cuvo v. De Biasi*, 169 Fed.Appx 688, 693 (3d Cir. 2006) (affirming dismissal of a claim "against the officers in their official capacities because a lawsuit against officers in their official capacities is functionally a suit against the public entity that employs them . . . . [T]he suit against the officers in their official capacities is redundant."); *Foglesong v.*

*Somerset Cnty.*, No, 12-77, 2013 WL 795064, at *9-10 (W.D.Pa. Mar. 4, 2013) (noting that "[c]ourts in this district . . . finding that such claims unnecessarily clutter a case and are likely to be confusing to a jury, have exercised their discretion to dismiss redundant § 1983 official capacity claims."); *M.S.*, 43 F.Supp.3d at 419.

Finally, dismissal on redundancy grounds does not impact Plaintiff's claims against Defendants Kahley and Hyers in their individual capacities. For the foregoing reasons, we hereby dismiss the claims of supervisory liability against Defendants Kahley and Hyers in their official capacities.

### 2. Claims Against Defendants Kahley and Hyers in their Individual Capacities

We now turn our attention to the claims against Defendants Kahley and Hyers in their individual capacities. In order to succeed on a § 1983 claim against an individual government defendant, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012). The Third Circuit has identified two general ways in which supervisors such as the Defendants may be liable for unconstitutional acts. First, "[i]ndividuals who are policy makers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. R.M.K. v.*

20

*Luzerne County Juvenile Detention Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting

*Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). "'Failure

to' claims – failure to train, failure to discipline, or…failure to supervise – are

generally considered a subcategory of policy or practice liability." *Barkes v. First*

*Correctional Medical, Inc.*, 766 F.3d 307, 316-17 (3d Cir. 2014). "A supervisor's

failure to 'properly train, discipline, or control' can form the basis for Section 1983

liability only 'if the supervisor (1) either knew contemporaneously of the

subordinate's offending behavior or knew of prior pattern [sic] of similar incidents

or circumstances and (2) acted in a manner that reasonably could be found to

communicate a message of approval to the subordinate.'" *M.S.*, 43 F.Supp.3d at

428 (analyzing § 1983 liability claims brought against individual defendants in

their individual capacities) (citing *Montgomery v. De Simone*, 159 F.3d 120, 126-

27 (3d Cir. 1998)).

    As discussed above, in his Complaint Plaintiff alleges that Defendants

Kahley and Hyers knew of specific prior incidents of possible excessive force and

nonetheless failed to investigate citizens' complaints. (Doc. 68, ¶¶ 106-108).[1]

With respect to Defendant Hyers, the Springettsbury Defendants argue that

Plaintiff must plead that Defendant Hyers directed the officers to violate Plaintiff's

---

[1] With respect to Defendant Kahley, the York Defendants argue that Plaintiff did not plead
sufficient facts about the prior incidents and did not indicate how Defendant Kahley was the
moving force behind the alleged constitutional violations. We have already determined that
Plaintiff has met his early pleading burden with regard to the specific prior incidents by
specifying names of individuals and the years of the incidents.

rights.  This is a misinterpretation of the law. As noted above, Plaintiff need not show that Defendant Hyers directed the officers to violate Plaintiff's rights. Rather, when a government official knows of deficiencies in policy and allows those deficiencies to create an environment where constitutional violations have an unreasonable risk of occurring, and such violations in fact occur, then individual supervisory liability can attach. *See Barkes*, 766 F.3d at 319-20. Here, Plaintiff pled specific prior similar incidents of possible excessive force. (Doc. 68 ¶ 63). Plaintiff further pled that Defendants failed to properly train and discipline officers in light of the prior incidents. (Doc. 68 ¶ 114). Plaintiff also pled that Defendants did not follow up on his own complaint regarding the use of force. (Doc. 68 ¶ 61). Most importantly for the instant claim, Plaintiff pled that Defendants Kahley and Hyers acted with deliberate indifference. (Doc. 68 ¶ 116). Given these allegations, Plaintiff has established a plausible inference that Defendants Kahley and Hyers knew of possible constitutional violations involving excessive force, failed to properly train or discipline officers with deliberate indifference to the consequences, and, as a result, created an environment where the risk of future violations could occur and did occur. We therefore find that dismissal at this juncture is premature.

**D.    Qualified Immunity**

In response to the supervisory liability claim, Defendant Kahley has raised a qualified immunity defense. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 135 S.Ct. 2042, 2044 (2015) (citing *Ashcroft v. Al-Kidd*, 131 S.Ct. 2074, 2085 (2011)). When deciding whether a right is clearly established, "[w]e do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. Qualified immunity, when properly applied, is meant to "protect[] all but the plainly incompetent or those who knowingly violate the law." *Id*. (internal citations omitted).

While it is true that qualified immunity should be resolved at the earliest possible stage of litigation, *see Hunter v. Bryant*, 502 U.S. 224, 227 (1991), at the motion to dismiss stage, "qualified immunity will be found only when the immunity is established on the face of the complaint." *Schor v. North Braddock Borough*, 801 F.Supp.2d 369, 378-79 (W.D.Pa. 2011) (citing *Thomas v. Independence Twp.*, 463 F.3d 285, 291 (3d Cir. 2006)). Thus, only where a plaintiff "fails to state a claim of a violation of a clearly established law, [is] a

defendant pleading qualified immunity . . . entitled to dismissal before the commencement of discovery." *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

For the foregoing reasons, we find that Plaintiff has pled enough specific facts to sustain supervisory liability and, therefore, at this early stage, a determination on qualified immunity would be imprudent. We may find occasion to rule on Defendant Kahley's qualified immunity defense at a later stage of the proceedings. Thus, we deny Defendants' Motions to Dismiss with regard to Defendants Kahley and Hyers in their individual capacities.

**E.     Intentional Infliction of Emotional Distress**

Finally, we consider Defendants' motions to dismiss Plaintiff's state law claim of intentional infliction of emotional distress (IIED). Section 46 of the Restatement of Torts defines IIED as requiring "extreme and outrageous conduct" that "intentionally or recklessly causes severe emotional distress to another." *Taylor v. Albert Einstein Medical Center*, 754 A.2d 650, 652 (Pa. 2000). The Pennsylvania Supreme Court has stated: "Although we have never expressly recognized a cause of action for intentional infliction of emotional distress, and thus have never formally adopted this section of the Restatement, we have cited the section as setting forth the minimum elements necessary to sustain such a cause of action." *Id.* (citing *Kazatsky v. King David Memorial Park*, 527 A.2d 988 (Pa.

1987)). "Extreme and outrageous conduct is conduct which is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society.'" *Jackson v. City of Philadelphia*, 2015 WL 2070084 at *6 (E.D. Pa. May 4, 2015) (quoting *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987 (Pa. Super. Ct. 1997)). In determining outrageousness, "[i]t is for the court in the first instance to determine whether the conduct may reasonably be regarded so extreme as to permit recovery." *Salerno v. Philadelphia Newspapers, Inc.*, 546 A.2d 1168, 1172 (Pa. Super. Ct. 1988). Furthermore, "'existence of the alleged emotional distress must be supported by competent medical evidence.'" *Jackson*, 2015 WL 2070084 at *6 (E.D. Pa. May 4, 2015) (quoting *Kazatsky*, 527 A.2d at 995 (Pa. 1987)).

Pennsylvania state courts have found for IIED in limited factual circumstances. *See Papieves v. Lawrence*, 263 A.2d 118 (Pa. 1970) (mishandling of a corpse); *Banyas v. Lower Bucks Hospital*, 437 A.2d 1236 (Pa. Super. Ct. 1981) (false documentation leading to homicide charge); *Hoffman v. Memorial Osteopathic Hospital*, 492 A.2d 1382 (Pa. Super. Ct. 1985) (denial of medical treatment in emergency room); *Weaver v. O'Connor*, 2014 WL 10936773 (Pa. Super. Ct. 2014) (sabotaging inmate's chances for a favorable outcome before the Parole Board). The Third Circuit, applying Pennsylvania law, has also affirmed

intentional infliction of emotional distress. *See Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d Cir. 1979) (reckless diagnosis of a fatal disease).

Based on the above limited circumstances in which Pennsylvania courts have found IIED to exist, Defendants argue that Plaintiff did not plead sufficiently outrageous conduct on the part of the officers. Specifically, York Defendants argue that Plaintiff's allegations of unnecessary and excessive force are not enough to sustain a claim of IIED and point to two Eastern District cases in support of their assertion. The first case, *Jackson v. City of Philadelphia*, 2015 WL 2070084 (E.D. Pa. May 4, 2015), involved a strip search of an inmate. The plaintiff broadly alleged that "during the search, he was assaulted, battered and subjected to malicious, sadistic and excessive force" by the officers. *Jackson*, 2015 WL 2070084 at *2. The court, in granting the defendants' motion for summary judgment, found that the plaintiff had not produced any evidence that the conduct of the officers was extreme and outrageous.

In the second case, *Wardlaw v. Newsome*, 2015 WL 1312028 (E.D. Pa. Mar. 23, 2015), the defendants, two police officers, stopped the plaintiff while he was walking outside. The officers "pushed Mr. Wardlaw up against the wall, threw him on the ground, handcuffed him, and beat him about his face, head, and neck." *Wardlaw*, 2015 WL 1312028 at *1. The court again granted defendants' motion for summary judgment, finding that the officers' conduct was not extreme or

outrageous because the officers testified that the plaintiff was not complying with their commands and resisted being handcuffed. "Outrageousness occurs in Pennsylvania jurisprudence only where 'the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"' … Average members of our community would not so exclaim upon learning of the officers' conduct toward Mr. Wardlaw." *Id.* at *4 (quoting *Hunger v. Grand Cent. Sanitation*, 670 A.2d 173, 177 (Pa. Super. Ct. 1996)).

First, we note that in both of the above cases, the claim of IIED was disposed of at the summary judgment stage, rather than through a motion to dismiss. In addition, we find that Plaintiff's claims are distinguishable from the above cases. In *Jackson*, the plaintiff pled vague allegations of excessive force, while in *Wardlaw*, the plaintiff was outside, able to flee, and was subject to force by just two police officers while resisting arrest. Here, Plaintiff has pled extremely specific details of force used by the officers. Plaintiff was also enclosed in a hotel room for most of the incident, making flight less likely. Furthermore, Plaintiff was surrounded by numerous officers from four police departments, and not merely two officers, as the facts of the *Wardlaw* case indicate.

If they have merit at all, Defendants' arguments are better suited to the summary judgment stage. Assuming Plaintiff's allegations to be true, we cannot

find that this was a simple case of "[p]olice officers doing their job by arresting people when they have probable cause to do so…" as York Defendants have argued. (Doc. 41 at *13).  We must reiterate that Plaintiff has alleged that the conduct of the officers included, but was not limited to, (1) prolonged beating Plaintiff with their fists, batons, and feet; (2) repeatedly tasing Plaintiff on the neck, back, and head; (3) threatening to attack Plaintiff with a dog; (4) threatening to kill him; (5) shouting "Die Nigger Die!"; (6) lifting Plaintiff off the ground solely by his handcuffs; (7) pushing Plaintiff down the stairs while handcuffed; and (8) climbing up on, and jumping off of a bed to "drop-kick" Plaintiff. (Doc. 1 ¶ 156).  Even accounting for the limited circumstances in which Pennsylvania courts have sustained a claim of IIED, we find that Plaintiff has pled sufficient details to suggest extreme and outrageous behavior at this early stage of the proceedings. As such, and in an abundance of caution, we are not inclined to dismiss the claim. Therefore, we deny Defendants' Motions to Dismiss Plaintiff's claim of intentional infliction of emotional distress.

## V.    CONCLUSION

For the reasons stated above, we will grant both Motions to Dismiss with respect to the official-capacity supervisor liability claims against Defendants Kahley and Hyers.  We dismiss said claims with prejudice.  We deny the Motions to Dismiss with respect to all remaining claims.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      Springettsbury Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. 40) is **GRANTED** in part and **DENIED** in part in accordance with the above-issued memorandum.

2.      York Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. 39) is **GRANTED** in part and **DENIED** in part in accordance with the above-issued memorandum.


 s/ John E. Jones III
John E. Jones III
United States District Judge