## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LOUIS GRAYSON,** | : | **Civil No. 1:15-CV-453** |
| | : | |
| **Plaintiff** | : | **(Judge Jones)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **MATTHEW DEWITT, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM OPINION AND ORDER

### I.      Statement of Facts and of the Case

Language is the medium we all use for communication of ideas.  On occasion, however, our words can spawn confusion rather than create clarity.  This may be what has occurred in the instant case, where the parties' current discovery disputes seem to be the product of mutual misunderstandings.

This case comes before us for resolution of various discovery disputes, and a motion to compel filed by the plaintiff.  (Doc. 90.)  The background of this dispute is as follows:  The plaintiff, Louis Grayson, has brought a federal civil rights lawsuit against numerous individual and institutional defendants arising out of Grayson's September 6, 2013, arrest in York County, Pennsylvania.  In his complaint Grayson lodges allegations of use of excessive force, failure to intervene and prevent the use of excessive force, supervisory and municipal liability against these defendants, along

with pendent state claims of assault, battery, and intentional infliction of emotional distress.

The parties are now embroiled in a discovery dispute. Broadly speaking, this dispute relates to disclosure of police policy manuals, citizen complaint submissions, internal affair investigations into allegations of police misconduct, and police disciplinary actions. These materials were sought by the plaintiff primarily in order to amass factual support for Grayson's municipal and supervisory liability claims. The parties have exchanged numerous communications regarding these broadly framed discovery demands, but these communications have not added clarity to their conversation. Several factors appear to combine and contribute to this lack of clarity. For example, some of the plaintiff's requests are cast broadly, without any topical or temporal limitations, while others were construed more narrowly by defendants as relating only to specific named parties. Further, in addressing the plaintiff's discovery demands it seems that the defendants construed these demands as relating solely to matters pertaining to excessive force, the allegations set forth in the complaint. The plaintiff, in turn, appears to have been casting his discovery net in a more sweeping fashion, and may have sought information concerning all citizen complaints, internal affairs investigations, and disciplinary actions taken by the defendant police departments. Further complicating this discovery process was the

fact that plaintiff's counsel learned that the defendants had produced different information in separate litigation.  This discrepancy raised concerns on the part of plaintiff's counsel, although the defendants take the position that these different discovery responses were a product of the different discovery demands made in these separate lawsuits.

When the parties were unable to amicably resolve this dispute, the plaintiff filed a motion to compel and for sanctions, (Doc. 90.), which was referred to the undersigned.  As is our custom, we initially scheduled a telephonic conference with counsel in an effort to reach an accord on these discovery matters.  That informal conference extended for an hour, but added little further clarity and produced no consensus among the parties.  Therefore, we directed further briefing on these discovery disputes.

This matter has now been fully briefed by the parties, and is ripe for resolution. Upon consideration of the parties' competing positions, for the reasons set forth below, the motion will be granted, in part.  Having found that this dispute arises out of mutual misunderstanding between counsel, all of whom have acted in good faith, we will decline the invitation to impose sanctions in this case.

## II.   <u>Discussion</u>

Several basic guiding principles inform our resolution of the instant discovery

dispute.   At the outset, Rule 37 of the Federal Rules of Civil Procedure governs

motions to compel discovery, and provides that:

> (a) Motion for an Order Compelling Disclosure or Discovery
>
> (1) In General.  On notice to other parties and all affected persons, a
> party may move for an order compelling disclosure or discovery. . . .

Fed. R. Civ. P. 37(a).

The scope of what type of discovery may be compelled under Rule 37 is

defined, in turn, by Rule 26 of the Federal Rules of Civil Procedure.Fed. R. Civ. P.,

Rule 26(b)(1), which provides that:

> Unless otherwise limited by court order, the scope of discovery is as
> follows:  Parties may obtain discovery regarding any nonprivileged
> matter that is relevant to any party's claim or defense and proportional
> to the needs of the case, considering the importance of the issues at stake
> in the action, the amount in controversy, the parties' relative access to
> relevant information, the parties' resources, the importance of the
> discovery in resolving the issues, and whether the burden or expense of
> the proposed discovery outweighs its likely benefit.  Information within
> this scope of discovery need not be admissible in evidence to be
> discoverable.

Fed. R. Civ. P., Rule 26(b)(1).

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment. Thus, it has long been held that decisions regarding Rule 37 motions are "committed to the sound discretion of the district court." DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974). Similarly, issues relating to the scope of discovery permitted under Rule 26 also rest in the sound discretion of the Court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Therefore, a court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J.1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D.Pa.2004) (citing Scott Paper Co. v. United States, 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J.1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y.1999)

5

> (holding that discovery rulings are reviewed under abuse of discretion
> standard rather than de novo standard); <u>EEOC v. Mr. Gold, Inc.</u>, 223
> F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's
> resolution of discovery disputes deserves substantial deference and
> should be reversed only if there is an abuse of discretion).

<u>Halsey v. Pfeiffer</u>, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This discretion is guided, however, by certain basic principles. Thus, at the outset, it is clear that Rule 26's definition of that which can be obtained through discovery reaches nonprivileged matter that is relevant to any party's claim or defense. Therefore, valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all relevant information a concept which is not confined to admissible evidence but is also defined in the following terms: "Information within this scope of discovery need not be admissible in evidence to be discoverable." Rather, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."

This concept of relevance is tempered, however, by principles of proportionality. Thus we are now enjoined to also consider whether the specific discovery sought is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery

6

in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P., Rule 26(b)(1).

A party moving to compel discovery bears the initial burden of proving the relevance of the requested information. Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D.Pa. 2001). Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D.Kan. 2009). Likewise, "[i]n deciding whether a federal privilege against discovery exists, plaintiffs as the objecting party have the burden of establishing the privilege." Bayges v. Se. Pennsylvania Transp. Auth., 144 F.R.D. 269, 271 (E.D. Pa. 1992). Indeed, because the assertion of a claim of privilege "may result in the withholding of relevant information and so may obstruct the search for truth," In re Chevron Corp., 633 F.3d 153, 164 (3d Cir. 2011), it is well-established that, " 'The burden of proving that the . . . privilege applies is placed upon the party asserting the privilege.' United States v. Landof, 591 F.2d 36, 38 (9th Cir. 1978)." Matter of Grand Jury Empanelled February 14, 1978, 603 F.2d 469, 474 (3d Cir. 1979).

Furthermore, requests for information relating to government investigations, such as police internal affair investigations, can implicate a legitimate governmental privilege, a governmental privilege which acknowledges a governmental needs to confidentiality of certain data but recognizes that courts must balance the confidentiality of governmental files against the rights of a civil rights litigant by considering:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intra-departmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiffs case.

Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D. Pa. 1973).

In addition, when assessing claims of relevance and proportionality in discovery disputes, we must focus on the nature of the parties' claims and defenses, and weigh the discovery demands against the relevance of the information as it

pertains to those claims or defenses.  This relevance determination is significant in this case since the plaintiff's discovery demands are generally tailored to develop evidence in support of a municipal liability claim.  Such municipal liability claims must meet an exacting burden of pleading and proof.  It is well-settled that local governmental entities may not be held liable under § 1983 for the acts of others under a theory of *respondeat superior* or vicarious liability.  Ashcroft v. Iqbal, 556 U.S. 662 (2009); see also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991). Instead, such an agency may only be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

Thus, to sustain a claim against this institutional defendant, a plaintiff must "identify a . . . 'policy' or 'custom' that caused the plaintiff's injury."  Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997).  This custom must be "so widespread as to have the force of law."  Id. at 404; see also Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (a policy is an official proclamation or edict of a municipality, while a custom is a practice that is "so permanent and well settled as to virtually constitute law") (quoting Andrews v. City of Phila., 895 F.2d

1469, 1480 (3d Cir. 1990) (citations omitted).  The plaintiff must further "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation."  Grayson v. Mayview State Hosp., 293 F.3d 103, 107 (3d Cir. 2002) (citing Brown, 520 U.S. at 404).  A municipality can be held liable on the basis of failure to train when "that failure amounts to 'deliberate indifference . . . [of the constitutional] rights of persons. . . .'"  Woloszyn v. County of Lawrence, 396 F.3d 314, 324 (3d Cir. 2005) (citations omitted).  There must also be a causal nexus, in that the "'identified deficiency in [the] training program must be closely related to the ultimate [constitutional] injury.'"  Id. at 325 (citations omitted).  Therefore, analysis of a claim under Monell requires separate analysis of two distinct issues: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so whether the [municipality] is responsible for that violation."  Collins v. City of Harker Heights, Texas, 503 U.S. 115, 120 (1992).

An institutional defendant may also be liable for constitutional violations resulting from inadequate training or supervision of its employees if the failure to train amounts to a custom of the municipality.  However, failure-to-train claims also must meet precise and demanding legal criteria.  Such a failure must "amount[] to deliberate indifference to the constitutional rights of persons with whom the police come in contact."  Colburn, 946 F.2d at 1028 (citing City of Canton v. Harris, 489

U.S. 378, 388 (1989)).  Proving agency liability on a theory of deliberate indifference is an especially difficult showing for a plaintiff to satisfy where the plaintiff has alleged that insufficient training or supervision has caused constitutional violations. Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997).  Such a showing requires that "(1) . . . lawmakers know that employees will confront a similar situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."  Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999).  Moreover, the plaintiff proceeding on such a theory must establish that the agency's "deliberate conduct . . . was the 'moving force' behind the injury alleged."  Reitz, 125 F.3d at 145 (quoting Brown, 520 U.S. at 404).  Therefore, the need for training, supervision, or other corrective action to avoid imminent deprivations of a constitutional right "must be so apparent that any reasonable policymaker or supervisor would have taken appropriate preventive measures."  Horton v. City of Harrisburg, No. 06-2338, 2009 U.S. Dist. LEXIS 63428, *13 (M.D. Pa. July 23, 2009) (quoting Strauss v. Walsh, No. Civ. A. 01-3625, 2002 U.S. Dist. LEXIS 24717, 2002 WL 32341791, at *3 (E.D. Pa. Dec. 17, 2002)).  Additionally, in order to recover for municipal liability on a failure-to-train theory, the alleged failure must be "closely related to the ultimate (constitutional) injury."  Woloszyn, 396 F.3d at 325.

The Supreme Court has reaffirmed the exacting guiding principles which define institutional civil rights liability based upon a failure to train or oversee law enforcement officers.   In <u>Connick v. Thompson</u>, – U.S.– , 131 S.Ct. 1350, 1359 (2011), the court described the parameters of agency liability in the following terms:

> A municipality or other local government may be liable . . .if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation.  <u>See</u> <u>Monell v. New York City Dept. of Social Servs.</u>, 436 U.S. 658, 692 (1978). But, under § 1983, local governments are responsible only for "their own illegal acts."  <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 479(1986) . . . . They are not vicariously liable under § 1983 for their employees' actions. . . . Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury.  <u>Monell</u>, 436 U.S., at 691.   Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. . . .   These are "action[s] for which the municipality is actually responsible." <u>Pembaur, supra</u>, at 479–480.   In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983.   A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.  <u>See</u> <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 822–823 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in <u>Monell</u> ").   To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." . . .   Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983. . . . " '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a

known or obvious consequence of his action." . . . Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program.

Id. (some citations deleted).

Given this exacting legal standard, the court in Connick also observed that:

"[C]ontemporaneous or subsequent conduct cannot establish a pattern of violations that would provide notice to the city and the opportunity to conform to constitutional dictates ...." Id. at n.7.

With these principles in mind, we turn to a resolution of the discovery disputes between these parties, as those disputes relate to disclosure of police policy manuals, citizen complaint submissions, internal affair investigations into allegations of police misconduct, and police disciplinary actions. Balancing these considerations of relevance, privilege and proportionality, and recognizing that questions of relevance are defined by the elements of proof for Monell municipal liability claims, we believe that the motion to compel should be granted in part, as denied in part, as follows:

First, given that contemporaneous or subsequent conduct generally cannot establish a pattern of violations that would provide notice to the city and the opportunity to conform to constitutional dictates, we will deny the plaintiff's request

13

for disclosure of information which post-dates the date of this alleged incident, September 2013.

As to information in the possession custody and control of the defendants which predates September 2013, striking the balance between relevance, proportionality and privilege, we will direct the following disclosures:

First, with respect to the named defendant police officers, the defendants shall identify all citizen complaints, internal affair investigations, and disciplinary findings in their possession, custody and control.   The defendants shall produce any responsive materials pertaining to the named defendant officers which relate to allegations of use of excessive force for inspection and copying by the plaintiff's counsel.   To the extent that there are responsive materials in the nature of citizen complaints, internal affair investigations, and disciplinary findings pertaining to the named defendant officers which do not relate to excessive force claims, the legal claim at issue in this case, the defendants should at a minimum identify the responsive materials, and if the defendants elect not to disclose these  records, provide the plaintiff with a privilege log identifying the withheld information, and the legal basis for withholding the requested information.   We will set no temporal limits on this discovery.

As for discovery requests which seek citizen complaints, internal affair investigations, and disciplinary findings that are in the possession, custody or control of the defendants which do not relate to any of the individual named defendants, we appreciate that these records may have some relevance to <u>Monell</u> claims if they reveal an endemic pattern or problem requiring municipal action.  However, consistent with the dictates of <u>Monell</u>, <u>Connick</u> and their progeny, we believe that the discovery should be tailored to the perceived deficiency in police training or conduct, in this case allegations of the use of excessive force.  We also believe that principles of proportionality call for some further temporal limitations on the scope of this particular discovery, as well as topical limitations, pertaining to the matters at issue in this litigation.  In the past, in the exercise of the court's discretion, courts have often set five year temporal limits on discovery.  <u>Miller v. Hygrade Food Prod. Corp.</u>, 89 F. Supp. 2d 643, 647 (E.D. Pa. 2000).  Therefore, it will be further ordered that the defendants shall produce for a period of five years prior to September 2013, all citizen complaints, internal affair investigations, and disciplinary findings relating to excessive force claims that are in their possession, custody or control.  Since some of these materials may relate to persons who are not named as parties in this litigation, these reports may be produced in a redacted format to protect the privacy of third parties.  Further, if the production of this information in specific instances in the

judgment of defense counsel entails privilege matters, the defense may move for a narrowly tailored protective order, and provide a privilege log in lieu of specific documents. Finally, if upon receipt of this information, plaintiff's counsel concludes that the disclosures to date indicate that additional discoverable information may exist, the plaintiff may seek discovery of that additional information.

Finally, recognizing that <u>Monell</u> liability entails an assessment of agency policies, the defendants shall produce the police policy manual that was in existence in 2013 for inspection by the plaintiff. If the defendant believes that any portion of that manual should be withheld, they shall provide a privilege log identifying the redacted portion(s) of the manual and describing the grounds for withholding this information.

An appropriate order follows.

## III.  <u>Order</u>

AND NOW this 5th day of October 2016, in accordance with the foregoing Memorandum, IT IS ORDERED that the plaintiff's's motion to compel, (Doc. 90.), is GRANTED in part and DENIED in part, as follows:

1.  The plaintiff's request for information post-dating the date of this alleged incident, September 2013, is DENIED.

16

2,      With respect to the named defendant police officers, for matters predating September 2013, IT IS ORDERED that  the defendants shall identify all citizen complaints, internal affair investigations, and disciplinary findings in their possession, custody and control.   The defendants shall produce any responsive materials pertaining to the named defendant officers which relate to allegations of use of excessive force for inspection and copying by the plaintiff's counsel.   To the extent that there are additional responsive materials in the nature of citizen complaints, internal affair investigations, and disciplinary findings pertaining to the named defendant officers which do not relate to excessive force claims, the legal claim at issue in this case, the defendants shall at a minimum identify the responsive materials, and if the defendants elect not to disclose these records, provide the plaintiff with a privilege log identifying the withheld information, and the legal basis for withholding the requested information.

3.      As for discovery requests which seek citizen complaints, internal affair investigations, and disciplinary findings that are in the possession, custody or control of the defendants which do not relate to any of the individual named defendants, IT IS FURTHER ORDERED that the

defendants shall produce for a period of five years prior to September 2013, all citizen complaints, internal affair investigations, and disciplinary findings relating to excessive force claims that are in their possession, custody or control.  Since some of these materials may relate to persons who are not named as parties in this litigation, these reports may be produced in a redacted format to protect the privacy of third parties.  Further, if the production of this information in specific instances in the judgment of defense counsel entails privilege matters, the defense may move for a narrowly tailored protective order, and provide a privilege log in lieu of specific documents.  Finally, if upon receipt of this information, plaintiff's counsel concludes that the disclosures to date indicate that additional discoverable information may exist, the plaintiff may seek discovery of that additional information.

4.    Finding that this dispute resulted from mutual, good faith misunderstanding between counsel, the plaintiff's request for monetary sanctions is DENIED.

5.    Finally, recognizing that <u>Monell</u> liability entails an assessment of agency policies, IT IS ORDERED that the defendants shall produce the police policy manual that was in existence  in 2013 for inspection by the

18

plaintiff.  If the defendant believes that any portion of that manual should be withheld, they shall provide a privilege log identifying the redacted portion(s) of the manual and describing the grounds for withholding this information.

The disclosures directed by the Court shall be made on or before **November 7, 2016**.

*__S/Martin C.  Carlson__*
Martin C. Carlson
United States Magistrate Judge